IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


CORDIS CORPORATION,                    )
                                       )
                    Plaintiff,         )
            v.                         )
                                       )      C.A. No. 98-197-SLR
BOSTON SCIENTIFIC CORPORATION and      )
SCIMED LIFE SYSTEMS, INC.,             )
                                       )
                    Defendants.        )


## CORDIS' REPLY ON INEQUITABLE CONDUCT

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Plaintiff Cordis Corporation*

*Of Counsel*:

Gregory L. Diskant
Eugene M. Gelernter
Scott B. Howard
Irena Royzman
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

Dated: December 13, 2006
176084.1

## Table of Authorities

Page

### CASES

Agfa Corp. v. Creo Prods. Inc., 451 F.3d 1366 (Fed. Cir. 2006)..........................................3

Consolidated Aluminum Corp. v. Foseco Int'l., Ltd., 910 F.2d 804
    (Fed. Cir. 1990)...........................................................................................................2

Cordis Corp. v. Boston Scientific Corp., 188 Fed. Appx. 984
    (Fed. Cir. 2006)................................................................................................... passim

Driscoll v. Cebalo, 731 F.2d 878 (Fed. Cir. 1984) ...............................................................3

Molins PLC v. Textron, Inc., 48 F.3d 1172 (Fed. Cir. 1995) ...................................3, 4, 5, 6

Morgan v. Celender, 780 F. Supp. 307 (W.D. Pa. 1992).....................................................11

Nordberg, Inc. v. Telsmith, Inc., 82 F.3d 394 (Fed. Cir. 1996)............................................8

Oran v. Stafford, 226 F.3d 275 (3d Cir. 2000) ...................................................................10

### STATUTES AND REGULATIONS

35 U.S.C. § 112(1) ...............................................................................................................2

37 C.F.R. § 1.56...................................................................................................................13

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    The '370 Patent is Not Tainted by Inequitable Conduct and is Not
      Unenforceable ....................................................................................................1

      A.    BSC Cannot Show an "Immediate and Necessary Relation"
            Between the Alleged Inequitable Conduct and the Issuance of the
            '370 Patent....................................................................................................2

      B.    Any Alleged Taint Was Cured by the Disclosure of Hillstead
            During the '370 Prosecution...........................................................................5

II.   Hillstead Was Not Intentionally Concealed During the '312 Prosecution...........................6

      A.    Dr. Fischell Did Not Intentionally Conceal Hillstead.............................................6

      B.    The Citation of Lam is Evidence of Good Faith......................................................8

      C.    BSC's Unfounded Attacks on Dr. Fischell's Credibility.......................................10

      D.    Dr. Fischell Did Not Cultivate Ignorance of Hillstead .........................................11

      E.    Mr. Rosenberg Did Not Commit Inequitable Conduct.........................................12

CONCLUSION................................................................................................................15

Cordis submits this reply memorandum in response to BSC's proposed findings on inequitable conduct.

A key issue on remand from the Federal Circuit is whether the alleged inequitable conduct during prosecution of the '312 patent "'had [an] immediate and necessary relation to the … enforcement of the ['370] patent.'" Cordis Corp. v. Boston Scientific Corp., 188 Fed. Appx. 984, 989 (Fed. Cir. 2006) (unpublished) (citation omitted). To prevail on this issue, BSC would need to show a direct, causal relation between the nondisclosure of Hillstead during the '312 prosecution and the later issuance of the '370 patent. To quote the Federal Circuit, BSC would need to show that the nondisclosure of Hillstead "carried over to the '370 prosecution" and "affected the later prosecution," in ways that were "immediate" and "necessary." Id.

BSC treats this issue as an afterthought. It does not attempt to show that the nondisclosure of Hillstead during the '312 prosecution "carried over" and "affected the later ['370] prosecution" in ways that are "immediate" and "necessary." Id. Indeed, the record establishes the opposite. With Hillstead affirmatively disclosed during the '370 prosecution and considered by the Examiner, the earlier nondisclosure was not "carried over" and did not "affect" the issuance of the '370 claims.

BSC devotes more space, but fares no better, in addressing the '312 patent. It relies on speculation and supposition – not clear and convincing evidence that Dr. Fischell intentionally concealed Hillstead during the '312 prosecution.

## I.    The '370 Patent is Not Tainted by Inequitable Conduct and is Not Unenforceable

1.    As the Federal Circuit found – and as BSC concedes – there was no inequitable conduct during the prosecution of the '370 patent-in-suit. Cordis, 188 Fed. Appx. at 988.

2.    In the absence of any inequitable conduct in the '370 prosecution, BSC is relegated to arguing that: (a) the '370 patent was tainted by inequitable conduct during the '312 prosecution; and (b) the taint was not cured. BSC cannot make either showing.

**A.    BSC Cannot Show an "Immediate and Necessary Relation" Between the Alleged Inequitable Conduct and the Issuance of the '370 Patent**

3.    The Federal Circuit has now clarified the "relevant inquiry" for determining whether alleged inequitable conduct during the '312 prosecution tainted the '370 patent:

> The relevant inquiry is whether the "inequitable conduct in prosecuting the [parent] patent had [an] immediate and necessary relation to the … enforcement of the [child] patents."

Cordis, 188 Fed. Appx. at 989, quoting Consolidated Aluminum Corp. v. Foseco Int'l., Ltd., 910 F.2d 804, 810-11 (Fed. Cir. 1990). To satisfy the "immediate and necessary relation" test, BSC would need to show that the "nondisclosure [of Hillstead] … carried over to the '370 prosecution," id., and "affected the later prosecution," in ways that were "immediate" and "necessary." Id. BSC does not, and cannot, meet this test.

4.    Consolidated Aluminum, 910 F.2d at 810-11, exemplifies the kind of case where inequitable conduct in one patent has an "immediate and necessary relation" to the issuance of later patents. In that case, the applicant committed inequitable conduct in an earlier application – which was prior art to the later patent – by concealing his best mode slurry, rather than describing it as required by 35 U.S.C. § 112(1). He then capitalized on his concealment by filing later patents which included claims directed to the slurry, which had been concealed in the earlier application. The inequitable conduct in the earlier, prior art application was the direct, but-for cause of the issuance of the later patents, in the sense that the later patents could not have issued but-for the inequitable conduct in the earlier application.

-2-

5.      This case presents an entirely different situation.  The nondisclosure of Hillstead during the '312 prosecution was not "carried over to the '370 prosecution," Cordis, 188 Fed. Appx. at 989, because Hillstead was affirmatively disclosed during the '370 prosecution. The earlier nondisclosure was not a but-for cause of issuance of the later patent and did not "affect[] the later prosecution" in an "immediate" and "necessary" way, id., because the Examiner considered Hillstead during the '370 prosecution after it was cited in an IDS.

6.      Cordis acquired rights in the application that led to the '370 patent after the '312 patent had issued.  After doing so, Cordis brought the Hillstead reference to Dr. Fischell's attention and promptly filed an IDS citing Hillstead.  D.I. 326 at ¶ 33.

7.      As a result, the Examiner had the opportunity to examine the '370 claims in light of the Hillstead reference and he, in fact, did so.  The Examiner memorialized his review of Hillstead by placing his initials next to that reference on PTO Form 1449A, "indicating his consideration of the same." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1184 (Fed. Cir. 1995).[1]

8.      BSC argues that Hillstead was "buried" among 60 references cited in an IDS.  D.I. 324 at 25.  However, BSC's own conduct shows that 60 cited references is not an inordinate number.  By way of comparison, BSC cited 330 references in an IDS filed during prosecution of U.S. Patent No. 6,515,009, which was asserted against Cordis in another case pending in this Court, C.A. No. 03-1138-SLR.  Ex. A.  Similarly, BSC cited more than 400 references during prosecution of U.S. Patent No. 6,251,920, which is asserted in that case.  Ex. B.

---

[1]  Agfa Corp. v. Creo Prods. Inc., 451 F.3d 1366, 1379-80 (Fed. Cir. 2006), and Driscoll v. Cebalo, 731 F.2d 878, 882 (Fed. Cir. 1984), both involved inapposite situations where information that was undisclosed during prosecution of an earlier patent remained undisclosed during prosecution of the later patent.  See Agfa, 451 F.3d at 1379-80 (the relevant information was "never" disclosed); Driscoll, 731 F.2d at 882 (in the later prosecution, the relevant reference was "again, *not* cited to the PTO") (emphasis in original).

9.    More basically, the relevant disclosure

in Hillstead was not buried.  It appears in the drawing

on the very cover of the patent, not in an obscure

passage buried in a lengthy text.



10.    When it suits its purposes, BSC argues

that anyone "look[ing] at Hillstead … would have

seen that it has 'undulations' because "Hillstead's

front page plainly shows undulations."  Ex. C.  This

assertion is the very lynchpin of BSC's theory that Dr.

Fischell committed inequitable conduct during the

'312 prosecution.

11.    BSC cannot have it both ways.  If Hillstead's undulations would have been

apparent to Dr. Fischell because they are "plainly" visible on the front page of the patent, as BSC

has argued, id., then they would have been equally apparent to the Examiner during the '370

prosecution when he reviewed Hillstead.  This simple fact dooms BSC's "burying" argument.

12.    BSC does not – and cannot – deny that the Examiner reviewed Hillstead during

the '370 prosecution.  The Examiner memorialized his review by placing his initials next to that

reference on PTO Form 1449A, "indicating his consideration of the same."  Molins, 48 F.3d at

1184 (rejecting a "burying" argument where the examiner's initials indicated his review of the

reference).  In initialing Form 1449A next to Hillstead, the Examiner was telling the public that

Hillstead was considered, not overlooked.  Id.; MPEP ¶ 609 (C)(2) (6th ed. July 3, 1997) (Ex. D).

13.    Instead of trying to show that the nondisclosure of Hillstead during the '312

prosecution "carried over" and "affected the later ['370] prosecution" in ways that were

"immediate" and "necessary" to the issuance of the '370 patent, Cordis, 188 Fed. Appx. at 989,

BSC relies on an irrelevant assertion that the '312 and '370 patents both have claims requiring

undulating longitudinals. D.I. 324 at 3, 22-23. However, relatedness of subject matter is not the

test. The "immediate and necessary" test requires proof that the alleged inequitable conduct

"carried over" and directly "affected the later prosecution." Cordis, 188 Fed. Appx. at 989. On

that key issue, BSC has nothing to say.

> **B.** **Any Alleged Taint Was Cured by the Disclosure of Hillstead During the '370 Prosecution**

14.     BSC also argues that the disclosure of Hillstead during the '370 prosecution was

not sufficient to cure the alleged taint. This argument fails for two reasons.

15.     First, as discussed above, there was no "taint" to cure in the first place.

16.     Second, the affirmative disclosure of Hillstead during the '370 prosecution gave

the Examiner the opportunity to consider that reference and effectively cured the earlier

nondisclosure. After submission of the IDS citing Hillstead, the Examiner reviewed that

reference, as indicated by his initials on PTO Form 1449A, and he examined the '370 claims in

light of it. Molins, 48 F.3d at 1184.

17.     BSC argues that disclosing Hillstead was not sufficient to cure the alleged taint

because of statements during the '312 prosecution that the prior art did not disclose undulating

longitudinals. D.I. 324 at 24.[2] Taken at face value, such statements could not have had any

effect beyond the non-disclosure itself. To the extent the Examiner believed during the '312

---

[2] BSC has never suggested that these statements were inequitable conduct. Instead, BSC's position at all times has been that the alleged inequitable conduct was the nondisclosure of Hillstead during the '312 prosecution. Consistent with BSC's assertions, that is how this Court framed the issue in its 2002 opinion, see D.I. 255 at 88, and it is how the Federal Circuit framed the issue on appeal. See Cordis, 188 Fed. Appx. at 987 (discussing the burden of proof for the "'failure to disclose' form of inequitable conduct").

prosecution that the prior art did not disclose stents with undulating longitudinals, the subsequent disclosure of Hillstead corrected that misimpression. It gave the Examiner a full opportunity to consider the Hillstead reference in examining the '370 claims. The Examiner availed himself of that opportunity, as indicated by his initials on PTO Form 1449A. Molins, 48 F.3d at 1184.

## II.    Hillstead Was Not Intentionally Concealed During the '312 Prosecution

18.    BSC also fails to show that there was inequitable conduct during the earlier '312 prosecution. In charging inequitable conduct, BSC faces a heavy burden:

> [O]ne who alleges a 'failure to disclose' form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant ... of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.

Cordis, 188 Fed. Appx. at 987. BSC has not made met that burden here.

### A.    Dr. Fischell Did Not Intentionally Conceal Hillstead

19.    BSC urges this Court to find that Dr. Fischell "looked at Hillstead and appreciated that [it] disclosed undulating longitudinal[s]" during the '312 prosecution. D.I. 324 at 4-5. There is no evidence that he did so, and extensive evidence that he did not.

20.    BSC tries to shift the burden by arguing that "there is no reason to believe" that Dr. Fischell did not look at Hillstead during the '312 prosecution. D.I. 324 at 5. However, the burden does not rest with Cordis. It rests squarely with BSC, as the party alleging inequitable conduct. Cordis, 188 Fed. Appx. at 987.

21.    Moreover, contrary to BSC's contention, the record provides ample "reason to believe" that Dr. Fischell was unaware of Hillstead until after the '312 prosecution ended. Dr. Fischell testified that he first became aware of Hillstead in a meeting with Cordis' litigation

counsel in April 1998, after the '312 prosecution ended, and that he was not aware of Hillstead before then. D.I. 1054 at Tr. 851:13-25, 889:6-8, 887:17-19, 849:8-12.[3] The Court did not question this testimony in its March 2002 opinion. This testimony is consistent with contemporaneous documentary evidence, which shows that Dr. Fischell's attention was directed towards a different reference (Sgro) and away from Hillstead.

22.    As discussed in Cordis' opening submission (D.I. 326 at ¶¶ 11-12), Dr. Fischell received a copy of the European Search Report and the references it cited under cover of a July 17, 1995 cover letter from his long-time counsel, Mr. Rosenberg. This letter was available because Dr. Fischell opened his files for production of otherwise privileged communications with his counsel. After full discovery, including discovery of otherwise privileged communications, there is no evidence that Dr. Fischell was aware of Hillstead or intended to conceal it. Rather, the documentary evidence points in the opposite direction.

23.    The July 1995 letter singled out a different reference – "European Patent Application #566807 whose inventor is Jean-Claude Sgro" – as the "only reference" cited in the Report that was "particularly relevant." DXB 11021. The letter did not mention Hillstead. Id. Relying on the letter, Dr. Fischell focused on Sgro. D.I. 1054 at Tr. 913:24-914:17, 890:13-18. He cited Sgro in the next IDS, and did not focus on or cite the other five references in the Search Report (Wallsten, Inoue, Hillstead, Didcott and Cottenceau). PX 5003, FWRAP 85.

24.    The first office action on the foreign counterpart application (PX 5116) would also have drawn Dr. Fischell's attention away from Hillstead. In that office action, the European Examiner – the same Examiner who issued the Search Report – rejected claims only based on Sgro. The European Examiner stated that the "additional features of dependent claim[] 8 [the

---

[3]  Dr. Fischell's hearing testimony appears in D.I. 1054 in C.A. No. 97-550-SLR; Mr. Rosenberg's hearing testimony appears in D.I. 1055.

only claim that required undulating longitudinals] … are *not* disclosed … in *any* of the documents cited in the search report." PX 5116 at ¶ 7 (emphasis added).

25.     BSC relies on the presence of the Search Report and the references it cited in Dr. Fischell's files.  However, these documents were in Dr. Fischell's files because he received them along with the July 17, 1995 cover letter, which directed his attention towards Sgro and away from the other cited references.  The presence of these documents in Dr. Fischell's files is not clear and convincing evidence that he was aware of Hillstead and intentionally concealed it.  See Nordberg, Inc. v. Telsmith, Inc., 82 F.3d 394, 397 (Fed. Cir. 1996).

26.     BSC places unwarranted significance in events that occurred long after Dr. Fischell received the July 1995 letter.  For example, BSC argues that Dr. Fischell "recognized that [Hillstead] showed undulating longitudinal structures" "when he looked at the figure … on the front page of Hillstead …." D.I. 324 at 6, 16.  What BSC neglects to mention is that this happened in April 1998 – after the '312 patent issued.  Similarly, BSC argues that Dr. Fischell became interested in obtaining claims covering stents with undulating longitudinals in early 1996, after he learned of competitive stents with that feature.  D.I. 324 at 7.  BSC also finds significance in the fact that Dr. Fischell's company (Isostent) entered into an agreement with Johnson & Johnson in March 1996 for a possible acquisition of rights in the '312 patent.  Id.  All of these events occurred after Dr. Fischell received the July 17, 1995 letter from Mr. Rosenberg. They have no bearing on Dr. Fischell's actions or state of mind when he received that letter.

## B.     The Citation of Lam is Evidence of Good Faith

27.     When Dr. Fischell came across the Lam reference (PX 5044), he understood it as disclosing undulating longitudinals.  D.I. 1054 at Tr. 918:11-16; see also D.I. 1055 at Tr. 992:10-13.  Rather than concealing Lam, he promptly cited it in an IDS (PX 5003, FWRAP 84-88) – and

distinguished it in ways that would have been equally applicable to Hillstead if he had been aware of that reference. Id., FWRAP 80. These facts are at odds with BSC's assertion that Dr. Fischell was attempting to conceal stents with undulating longitudinals.

28.     Here as elsewhere, the contemporaneous documentary record confirms Dr. Fischell's testimony. When Dr. Fischell filed the IDS citing Lam, he simultaneously filed new application claim 28, which distinguished Lam by requiring longitudinal structures with "a multiplicity of straight section[s] ... being joined continuously to at least one undulating section, the straight sections of all of the longitudinal structures being generally parallel to the longitudinal axis of the stent ...." PX 5003, FWRAP 80. The only conceivable reason for adding these narrowing limitations was to avoid Lam as Dr. Fischell understood it. Dr. Fischell could have distinguished Hillstead on the same grounds, if he had been aware of it.

29.     BSC notes that Dr. Fischell did not discuss Lam in his deposition and then jumps to the conclusion that the evidence concerning Lam was "concocted by Cordis." D.I. 324 at 13-14. That assertion is baseless. The reason Dr. Fischell did not discuss Lam in his deposition is that BSC's counsel did not ask any questions about Lam. Nor did BSC's counsel try to refresh Dr. Fischell's recollection by showing him the Lam reference or the IDS which cited it. When Dr. Fischell was shown these documents in the evidentiary hearing, he described the Lam reference as he understood it. There is no inconsistency.

30.     BSC also argues that Dr. Fischell's testimony about his (mis)understanding of Lam is "not credible" because several figures in Lam show that the "undulations run circumferentially, not longitudinally." D.I. 324 at 13-14. BSC could not offer this argument if it disclosed all relevant facts to the Court. As BSC knows, its own opinion counsel, Oliver Arret, relied on a disclosure that is identical to Lam's disclosure in all relevant respects, by Lam's co-

worker, Lilip Lau, as anticipating the claims of the '312 patent, i.e., disclosing undulating longitudinals. Mr. Arret's opinion illustrates how easy it is to misapprehend the Lam disclosure.

31.    Although the Court previously denied Cordis' motion to supplement the record to include Mr. Arret's opinion, D.I. 256, Cordis would urge the Court to revisit the issue sua sponte or to take judicial notice of Mr. Arret's opinion (D.I. 237, Ex. A at 14) in order to ascertain the true and complete facts on this issue. See Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000).

## C.    BSC's Unfounded Attacks on Dr. Fischell's Credibility

32.    In place of clear and convincing evidence, BSC offers ad hominem attacks. Dr. Fischell is a respected inventor, with more than 120 patents. He has been honored as the Inventor of the Year by the Intellectual Property Owners Association. He does not deserve the attacks that BSC offers.

33.    First, BSC denigrates Dr. Fischell's testimony as "equivocal." D.I. 324 at 8. Dr. Fischell testified that: (a) he first became aware of Hillstead in April 1998, D.I. 1054 at Tr. 851:13-25, 849:8-12, 889:3-8; (b) he was "completely unaware of it" until then, id. at Tr. 887:17-19; and (c) he had "no recollection of having seen it" earlier. Id. at Tr. 852:1-6. Nothing about this testimony is inconsistent or equivocal.

34.    Second, BSC tries to find an inconsistency between Dr. Fischell's hearing testimony concerning Lam and the fact that he did not discuss Lam in his deposition. D.I. 324 at 9-10. As discussed above (¶ 29), BSC's counsel did not ask any questions about Lam during the deposition and did not try to refresh Dr. Fischell's recollection by showing him a copy of Lam or a copy of the IDS citing it. When Dr. Fischell was shown these documents in the hearing, he described Lam as he understood it. There is no inconsistency.

35.      Third, BSC tries without success to manufacture an inconsistency between Dr. Fischell's testimony (D.I. 1054 at Tr. 917:17-25) that he did not discuss the "Y" references with Mr. Rosenberg at the time the IDS was filed in June 1996, and his testimony (id. at Tr. 928:9-16) that he had no specific recollection of discussions with Mr. Rosenberg concerning the June 1996 IDS. D.I. 324 at 10-11. On both occasions, Dr. Fischell did not recall any discussions with Mr. Rosenberg concerning the "Y" references. Again, there is no inconsistency.

36.      Finally, BSC offers incorrect accusations about Dr. Fischell's testimony in a state court case captioned Trellis v. Fischell, involving facts that are entirely unrelated to BSC's allegations of inequitable conduct. D.I. 324 at 11-12. As with its discussion of Lam, BSC could not make this accusation if it disclosed all relevant facts to the Court. As BSC knows, Dr. Fischell's 1996 deposition testimony in the Trellis case involved the conception date of different patents – on radioactive stents – not the conception date of the '312 patent, as BSC argues.

37.      The Court did not accept BSC's accusations concerning the Trellis case when BSC offered them four-plus years ago, and should not accept them now. Although the Court previously denied Cordis' motion to supplement the record concerning the Trellis case, D.I. 256, Cordis would urge the Court to revisit the issue sua sponte or take judicial notice of the complaint (D.I. 238, Ex. D) and relevant assignment in the Trellis case (D.I. 237, Ex. C) in order to ascertain the true and complete facts on this issue. See Morgan v. Celender, 780 F. Supp. 307, 309 (W.D. Pa. 1992) (taking judicial notice of a complaint in another case).

### D.      Dr. Fischell Did Not Cultivate Ignorance of Hillstead

38.      After failing to demonstrate that Dr. Fischell was aware of Hillstead and intentionally concealed it, BSC retreats to a fallback position. It argues that "if Dr. Fischell[] ... was not aware of Hillstead until April 1998" then he must have "cultivated ignorance" of that

reference. D.I. 324 at 2. BSC has no evidence – let alone "clear and convincing" evidence – to support this theory.

39.     The test for "cultivated ignorance," as described by the Federal Circuit, requires clear and convincing evidence that Dr. Fischell "knew of the Hillstead patent" and "knowing that [it] contained information that was likely material to the patentability of the '312 patent, purposefully avoided obtaining knowledge of the details of the patent." Cordis, 188 Fed. Appx. at 988. BSC's argument proceeds from the exact opposite premise – that Dr. Fischell was "**not** aware of Hillstead until April 1998". D.I. 324 at 2 (emphasis added).

40.     BSC supports its "cultivated ignorance" argument by simply repeating its earlier arguments about intentional concealment. D.I. 324 at 15-18. Those arguments do not provide clear and convincing evidence that Dr. Fischell was aware of Hillstead, and do not provide clear and convincing evidence that he cultivated ignorance of that reference. See ¶¶ 18-37, supra.

41.     After full discovery – including discovery of otherwise privileged documents from Dr. Fischell's files – there is not a shred of evidence that Dr. Fischell was aware of Hillstead or its contents prior to April 1988. There is no evidence that he thought about Hillstead during the '312 prosecution or "purposefully avoided" learning details about it.

E.     **Mr. Rosenberg Did Not Commit Inequitable Conduct**

42.     In remanding this case, the Federal Circuit framed with specificity the question(s) it wanted this Court to address concerning Mr. Rosenberg (Cordis, 188 Fed. Appx. at 988):

> The court also should determine whether its finding of inequitable
> conduct [in March 2002] [was] based to any degree on the conduct
> of Mr. Rosenberg and, if so, what state of knowledge the court
> finds him to have had as to the existence and materiality of the
> Hillstead reference.

43.    Cordis is confident that this Court's finding of inequitable conduct in March 2002 was not based "to any degree on the conduct of Mr. Rosenberg" (id.) because BSC did not accuse him of inequitable conduct in its post-hearing briefs in 2001. D.I. 231; D.I. 240. Nor did BSC accuse him of inequitable conduct in its appeal brief in the Federal Circuit. Following the evidentiary hearing, the only time BSC accused Mr. Rosenberg of inequitable conduct was in a brief response to a question during oral argument in the Federal Circuit.

44.    Cordis did not address this issue in its opening submission because it assumed that BSC – after not accusing Mr. Rosenberg of inequitable conduct in its post-hearing briefs in 2001 and not accusing him of inequitable conduct in its appeal brief in 2005 – would not accuse him of inequitable conduct now. Unfortunately, that assumption was incorrect.

45.    BSC's current assertion that Mr. Rosenberg committed inequitable conduct has no basis in fact.

46.    Mr. Rosenberg has been a respected member of the bar for more than 30 years. He founded the law firm of Rosenberg, Klein & Lee. D.I. 1055 at Tr. 981:18-25. He has prosecuted thousands of patent applications. He has never been accused of inequitable conduct. See D.I. 149, Ex. 45 at ¶¶2-3.

47.    At the time Mr. Rosenberg received the European Search Report in 1995, he was representing Dr. Fischell only in connection with foreign counterparts to the '312 application, and not for U.S. prosecution (which Dr. Fischell was handling pro se). D.I. 1055 at Tr. 955:12-17, 982:22-983:4. Because Mr. Rosenberg was not involved at the time in U.S. prosecution, his only focus was on foreign prosecution and he did not have any U.S. disclosure obligations as a matter of law. 37 C.F.R. § 1.56.

48.    At the time, Mr. Rosenberg did not consider Hillstead significant because, in his experience, the European Patent Office rarely relies on "Y" references as the basis for a rejection. D.I. 1055 at Tr. 984:16-24. As a result, Hillstead, did not make "any impression" on him. Id. at Tr. 986:19-23. He placed the European Search Report and the accompanying references in his separate file for the European counterpart applications, id. at Tr. 988:16-989:1, and he did not mention Hillstead in his July 1995 cover letter to Dr. Fischell. DXB 11021.

49.    Subsequent events confirmed Mr. Rosenberg's view that Hillstead was not significant for European prosecution. The first official action in the European prosecution only rejected claims based on Sgro. PX 5116; D.I. 1055 at Tr. 984:25-985:3. The office action did not reject any claims based on the other references in the Search Report and did not cite Hillstead. Id. Indeed, the European Examiner – the same examiner who issued the Search Report, DXB 10004 – stated that the "additional features of dependent claim[] 8 [which required undulating longitudinals] ... are not disclosed in their present form in *any* of the documents cited in the search report." PX 5116 at ¶ 7 (emphasis added).

50.    In late 1995 and early 1996, Dr. Fischell learned that the U.S. application file had repeatedly been lost in the PTO. He then asked Mr. Rosenberg to assume responsibility for U.S. prosecution of the '312 patent, to straighten out that problem. D.I. 1054 at Tr. 858:2-13.

51.    When Mr. Rosenberg took over the U.S. prosecution in the Spring of 1996, he did not recall previously receiving the Hillstead reference and he did not review his separate file for the European prosecution. D.I. 1055 at Tr. 986:24-987:4, 989:14-20. If he had done so, he would have seen the Search Report and would have filed an IDS citing all the references it contained. Id. at Tr. 990:8-10, 991:19-23.

-14-

52.     BSC argues that Mr. Rosenberg deliberately chose not to look in his European file, to "purposefully avoid[] refreshing his knowledge about the contents of the search report and the details of the prior art cited therein as particularly relevant, including Hillstead." D.I. 324 at 18. This accusation is not supported by a shred of evidence and it has no basis in fact.

## CONCLUSION

For the reasons set forth above and in Cordis' opening submission, the Court should find that BSC has not proved by clear and convincing evidence that: (1) the '312 patent was procured by inequitable conduct, and (2) there is an "immediate and necessary relation" between the alleged inequitable conduct in the '312 patent and the issuance of the '370 patent.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Plaintiff Cordis Corporation*

*Of Counsel:*

Gregory L. Diskant
Eugene M. Gelernter
Scott B. Howard
Irena Royzman
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

Dated: December 13, 2006
176084.1