IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 98-197-SLR |
| ) | |
| BOSTON SCIENTIFIC CORPORATION, ) | |
| and SCIMED LIFE SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |

**BOSTON SCIENTIFIC'S ANSWERING BRIEF IN OPPOSITION TO
CORDIS' PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON INEQUITABLE CONDUCT**

Of Counsel:

George E. Badenoch
Albert J. Breneisen
Mark A. Chapman
Huiya Wu
KENYON & KENYON LLP
One Broadway
New York, New York 10004
(212) 425-7200

William M. Merone
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

December 13, 2006

Josy W. Ingersoll (I.D. #1088)
Karen E. Keller (I.D. #4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants
Boston Scientific Corporation,
and Boston Scientific Scimed, Inc.
(formerly Scimed Life Systems, Inc.)

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

A.  The Federal Circuit's Mandate Is Limited to a Request for Supplemental
    Findings in Support of this Court's Unenforceability Judgment ........................................ 2

B.  The Materiality of Hillstead Has Been Affirmed and Is No Longer at Issue ...................... 2

C.  Dr. Fischell and Mr. Rosenberg Withheld Hillstead with an Intent to Deceive
    the Patent Office .................................................................................................................. 3

    1.  Dr. Fischell's Testimony that He Was Not Aware of Hillstead until
        April 1998 Is Not Credible ....................................................................................... 3

        a.  Dr. Fischell's Testimony Was Equivocal Because He Could
            Not Recall Whether or Not He Looked at Hillstead ...................................... 3

        b.  Dr. Fischell's Testimony Was Inconsistent with His General
            Practice of Looking at the Cited References .................................................. 3

        c.  Dr. Fischell's Credibility Was Repeatedly Impeached by His
            Prior Inconsistent Testimony .......................................................................... 4

    2.  Even if Dr. Fischell Was Not Aware of Hillstead, He Cultivated
        Ignorance by Choosing Not to Look at the European Search Report
        and Hillstead ............................................................................................................. 5

    3.  Mr. Rosenberg also Cultivated Ignorance by Choosing Not to Look in
        His File for the European Application ..................................................................... 7

    4.  There Was No Reason to Conduct a Prior Art Search Because Both
        Dr. Fischell and Mr. Rosenberg Already Had a Copy of Hillstead ......................... 8

    5.  Cordis' Good Faith Explanations Are Not Credible ................................................ 8

        a.  The July 1995 Letter Did Not Instruct Dr. Fischell to Disregard
            Hillstead .......................................................................................................... 8

        b.  Dr. Fischell and Mr. Rosenberg Did Not Disclose Lam in the
            Belief that It Disclosed Undulating Longitudinal Structures ......................... 9

D.  The Inequitable Conduct Committed during the '312 Prosecution Renders the
    '370 Patent Unenforceable ................................................................................................. 10

    1.  The Failure to Disclose Hillstead during the '312 Prosecution "Taints"
        the '370 Patent ........................................................................................................ 10

  2. Cordis' Disclosure of Hillstead During the '370 Prosecution Did Not "Cure" the Earlier Inequitable Conduct ............................................................ 13

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agfa Corp. v. Creo Products,*
  451 F.3d 1366 (Fed. Cir. 2006) .......................................................................... 11, 13

*Brasseler, U.S.A., I, L.P. v. Stryker Sales Corp.,*
  267 F.3d 1370 (Fed. Cir. 2001) ........................................................................... 5, 6, 7

*Consolidated Aluminum v. Foseco Int'l,*
  910 F.2d 804 (Fed. Cir. 1990) ............................................................................. 11, 13

*Cordis Corp. v. Boston Scientific Corp.,*
  Nos. 05-1418, 05-1432,
  2006 U.S. App. LEXIS 16621 (Fed. Cir. June 29, 2006) .................................. *passim*

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,*
  851 F.2d 1387 (Fed. Cir. 1988) ................................................................................ 9

*eSpeed v. Brokertec USA,*
  417 F. Supp. 2d 580 (D. Del. 2006) .................................................................. 11, 14

*FMC Corp. v. Hennessy Indus., Inc.,*
  836 F.2d 521 (Fed. Cir. 1987) ............................................................................. 5, 6, 7

*Fox Indus. v. Structural Preservation Sys.,*
  922 F.2d 801 (Fed. Cir. 1990) ................................................................................ 11

*In re Hayes Microcomputer Products, Inc. Patent Litigation,*
  982 F.2d 1527 (Fed. Cir. 1992) ................................................................................ 5

*Jack Frost Lab. v. Physicians & Nurses Mfg. Corp.,*
  901 F. Supp. 718 (S.D.N.Y. 1995) ......................................................................... 11

*Keystone Driller v. General Excavator,*
  290 U.S. 240 (1933) ................................................................................................ 11

*Rohm & Haas Co. v. Crystal Chem. Co.,*
  722 F.2d 1556 (Fed. Cir. 1983) .......................................................................... 13, 14

*Semiconductor Energy Lab. v. Samsung Electronics America,*
  24 F. Supp. 2d 537 (E.D.Va. 1998) ................................................................... 11, 14

BSC respectfully submits this answering brief in opposition to Cordis' Proposed Findings of Fact and Conclusions of Law on Inequitable Conduct. D.I. 326.

## SUMMARY OF ARGUMENT

Cordis' opening brief ignores this Court's instruction not to argue the law and ignores the Federal Circuit's mandate instructing only that this Court make supplemental findings in support of its unenforceability judgment. Instead, Cordis seeks to reargue its original position that there was no inequitable conduct because Hillstead was eventually disclosed and because Dr. Fischell (and his attorney Mr. Rosenberg) could not have had the requisite intent to deceive—either deliberately or by cultivating ignorance—because his testimony that he was unaware of Hillstead until April 1998 was "uncontradicted" and unquestioned by this Court.

Cordis' position is untenable. First, the Federal Circuit did not reverse or vacate this Court's unenforceability judgment. It only asked for supplemental findings in support of the judgment to enable its further review of the intent and taint issues. Second, the Federal Circuit did not reopen the materiality issue. It expressly affirmed this Court's finding that Hillstead was material. Finally, it is not true that Dr. Fischell's self-serving testimony about when he supposedly became aware of Hillstead was uncontradicted. The testimony on which Cordis relies was equivocal at best, and it is plainly belied by the overwhelming contrary evidence summarized in BSC's opening submission.

Cordis also attempts to immunize the '370 patent from the earlier withholding of Hillstead during the '312 prosecution by asserting that it did not make use of that inequitable conduct during the '370 prosecution. That is incorrect. The '370 patent was prosecuted before the same examiner as the '312 patent. That examiner continued to search for prior art that disclosed the "undulating longitudinal" feature that was critically important to the patentability of the claims in both patents, and Cordis continued to conceal the fact that this feature was disclosed by Hillstead.

This Court previously found that Dr. Fischell and Mr. Rosenberg withheld Hillstead with an intent to deceive the Patent Office during the '312 prosecution, and that this inequitable conduct carried over to the '370 prosecution. This Court should make the supplemental findings proposed by BSC and reaffirm the unenforceability judgment.

## ARGUMENT

### A. The Federal Circuit's Mandate Is Limited to a Request for Supplemental Findings in Support of this Court's Unenforceability Judgment

Cordis' request that this Court reverse its unenforceability judgment (D.I. 326 at 3, 25) is not consistent with the Federal Circuit's mandate. The Federal Circuit did not reverse or vacate the unenforceability judgment and it did not instruct this Court to reconsider, much less reverse, that judgment on remand. Instead, it remanded with instructions that this Court make "supplemental findings on several factual questions" to "explain" and "elaborat[e]" upon this Court's earlier findings, in order to better enable the Federal Circuit to review the findings that support the judgment. *Cordis Corp. v. Boston Scientific Corp.*, Nos. 05-1418, 05-1432, 2006 U.S. App. LEXIS 16621, at *4, *11, *14 (Fed. Cir. June 29, 2006). This Court should follow those instructions and make the supplemental findings proposed by BSC in support of the judgment, not reconsider or reverse it as Cordis urges.

### B. The Materiality of Hillstead Has Been Affirmed and Is No Longer at Issue

Cordis suggests that Hillstead is not material by emphasizing that the '370 patent and the European counterpart patent issued after Hillstead was disclosed. D.I. 326 at 5, ¶¶ 8-9; 12-13, ¶¶ 35-40. That assertion is inconsistent with the Federal Circuit's decision. This Court properly found Hillstead to be material because it disclosed the one feature that was critical to the patentability of the claims in both the '312 and '370 patents—undulating longitudinals. D.I. 255 at 88, ¶ 12. The Federal Circuit affirmed this Court's finding on that point. *Cordis*, 2006 U.S. App. LEXIS 16621, at *4-5. Therefore, the fact that Hillstead was material to the prosecution is now the law of the case, and Cordis cannot further dispute it.

2

### C. Dr. Fischell and Mr. Rosenberg Withheld Hillstead with an Intent to Deceive the Patent Office

#### 1. Dr. Fischell's Testimony that He Was Not Aware of Hillstead until April 1998 Is Not Credible

As explained in BSC's opening submission, this Court should find that Dr. Fischell at least looked at Hillstead upon receiving it with Mr. Rosenberg's letter and the European search report in July 1995. D.I. 324 at 4-12. In particular, this Court should reject Cordis' proposed finding that Dr. Fischell was not aware of Hillstead until April 1998. D.I. 326 at 6, ¶ 10; 8, ¶ 17; 14, ¶¶ 5-6. Cordis characterizes Dr. Fischell's self-serving testimony to this effect as "uncontradicted" and asserts that "[t]he Court did not question the truthfulness of this testimony in 2002 and it should not do so today – years after the fact." *Id.* at 14, ¶¶ 5-6. However, as explained in BSC's opening submission, there are ample grounds to find Dr. Fischell's testimony not credible. D.I. 324 at 8-12.

##### a. Dr. Fischell's Testimony Was Equivocal Because He Could Not Recall Whether or Not He Looked at Hillstead

First, as explained in BSC's opening submission, Dr. Fischell's testimony that he was not aware of Hillstead until 1998 was equivocal. He testified that he "may have looked at" Hillstead in 1995 when Mr. Rosenberg sent him a copy with the European search report, but that he could not recall whether or not he had done so. *Id.* at 8-9.

##### b. Dr. Fischell's Testimony Was Inconsistent with His General Practice of Looking at the Cited References

Second, as explained in BSC's opening submission, Dr. Fischell's testimony was admittedly inconsistent with his "general practice" upon receiving a search report from Mr. Rosenberg to "look at the pictures" of the cited references to "see if [the pictures] looked like [his] invention." *Id.* at 9. He had no explanation for why he would not have followed this "general practice" in this case upon receiving Hillstead with the European search report in July 1995, and his story that he did not do so is unconvincing in view of the following additional evidence discussed in BSC's opening submission:

3

1. Dr. Fischell understood that the undulating longitudinal feature of his invention was very important to patentability, to the coverage of competitive stents, and to the value placed on the patent by the prospective purchaser, Johnson & Johnson. *Id.* at 6-7.

2. The July 1995 letter instructed Dr. Fischell that the European search report and the cited references were "enclosed for [his] review," and the search report identified Hillstead and its figures as "particularly relevant" to the only European claim that included the undulating longitudinal feature. *Id.* at 5-6.

3. Dr. Fischell was "keenly interested" in stent designs at the time, and he acknowledged that when he looked at the figure on the front page of Hillstead he recognized that it showed undulating longitudinal structures. *Id.* at 6.

4. Dr. Fischell understood that he alone had an obligation to determine whether the prior art cited in the search report was material and that Mr. Rosenberg was not advising him about that for the U.S. prosecution. *Id.*

### c. Dr. Fischell's Credibility Was Repeatedly Impeached by His Prior Inconsistent Testimony

Finally, on several occasions at trial Dr. Fischell's credibility was impeached by his prior inconsistent testimony.

As explained in BSC's opening submission, Dr. Fischell testified inconsistently at trial and at his deposition in this case about his understanding during the '312 prosecution of whether any prior art disclosed undulating longitudinal structures. *Id.* at 9-10. He also testified inconsistently at trial and at his deposition in this case about his conversations with Mr. Rosenberg at their meeting in June 1996 prior to filing the IDS and amendment. *Id.* at 10-11. Finally, he also testified inconsistently at trial and in a prior action about when he and his sons conceived their invention. *Id.* at 11-12.

Dr. Fischell had no explanation for any of these discrepancies and this Court should find that he was not a credible witness.[1,2]

### 2. Even if Dr. Fischell Was Not Aware of Hillstead, He Cultivated Ignorance by Choosing Not to Look at the European Search Report and Hillstead

As explained in BSC's opening submission, this Court should find that, even if Dr. Fischell's assertion that he was not aware of Hillstead until April 1998 were accepted, that assertion could only be true if he deliberately and improperly cultivated ignorance about Hillstead and its details. D.I. 324 at 14-18. In particular, this Court should reject Cordis' argument that Dr. Fischell could not have cultivated ignorance about Hillstead if he was not aware of it during the '312 prosecution. D.I. 326 at 17-18, ¶¶ 13-19.

As Cordis acknowledges, an applicant "cannot 'cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art.'" D.I. 326 at 17, ¶ 14 (quoting *FMC Corp. v. Hennessy Indus. Inc.*, 836 F.2d 521, 526 n.6 (Fed. Cir. 1987)). A "duty to inquire arises" where "the applicant or the prosecuting attorney 'is on notice of the likelihood that specific, relevant, material information exists and should be disclosed.'" *Cordis*, 2006 U.S. App. LEXIS 16621, at *8 (quoting *Brasseler, U.S.A., I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383 (Fed. Cir. 2001)). "In such a case, the applicant or prosecuting attorney is not free to choose 'not to

---

[1] Given Dr. Fischell's lack of credibility and the contrary evidence discussed above, a finding of intent to deceive would not be improperly based on "conjecture alone," as Cordis argues. D.I. 326 at 14-15, ¶ 6 (quoting *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1546 (Fed. Cir. 1992)). This case is different from *Hayes*, where the Court held that speculative testimony by an expert witness that "there was 'perhaps' a deliberate concealment of the best mode" and an attorney's opinion that "there was 'fraudulent procurement'" were insufficient to establish intent. 982 F.2d at 1546.

[2] Cordis tries to distract the Court from Dr. Fischell's lack of credibility in this case by referring to miscellaneous praise for his other activities, including a speech in Congress made by (then) Representative Cardin almost five years after the trial in this case (D.I. 326 at 4, ¶ 2) (albeit without disclosing that shortly after that speech Dr. Fischell made two contributions to Mr. Cardin's Senate campaign (*see* Ex. A attached hereto)). All of this evidence is outside the record and irrelevant to Dr. Fischell's credibility in this case.

investigate the facts necessary to determine the materiality of the [information] in an effort to avoid complying with their duty to disclose.'" *Cordis*, 2006 U.S. App. LEXIS 16621, at *8-9 (quoting *Brasseler*, 267 F.3d at 1382).³

Therefore, Cordis' argument that Dr. Fischell could not have cultivated ignorance about Hillstead if he was not aware of it during the '312 prosecution is incorrect. D.I. 326 at 17-18, ¶¶ 13-19. To the extent that Dr. Fischell was not aware of Hillstead, it was because he cultivated ignorance by not looking at the search report and the cited references after reading the July 1995 letter. His review of the letter put him "on notice of the likelihood that specific, relevant, material information exist[ed]" in the search report and the cited references that were "enclosed for [his] review." *Brasseler*, 267 F.3d at 1383. Therefore, Dr. Fischell, who was prosecuting the '312 application himself, was not free to choose "not to investigate the facts necessary to determine the materiality of the [information]" in the search report and the cited references "in an effort to avoid complying with [his] duty to disclose." *Id.* at 1382.

To the extent that Dr. Fischell was not aware of Hillstead, it was because he failed to comply with this duty to investigate. He was not free to choose not to turn the page and look at the three-page search report that identified Hillstead and its figures as "particularly relevant" to the only European claim that disclosed the undulating longitudinal feature that was important to patentability in the U.S. To the extent that he failed to do so, he deliberately and improperly "cultivated ignorance" "to avoid actual knowledge of th[e] information or prior art" in the search report and Hillstead. *Id.*; *FMC*, 836 F.2d at 526 n.6.⁴

---

³ In its opening submission, Cordis ignored the Court's instructions "not . . . to argue the law." D.I. 323 at 3:12-16. BSC followed those instructions in its opening submission, but now includes legal arguments to respond to Cordis' legal arguments.

⁴ Dr. Fischell's failure to look at the search report and Hillstead is analogous to the failure of the attorneys in *Brasseler* to investigate the date and circumstances of the potential on-sale bar event after they received notice of its existence. 267 F.3d at 1381-85.

6

### 3. Mr. Rosenberg also Cultivated Ignorance by Choosing Not to Look in His File for the European Application

As explained in BSC's opening submission, this Court should also find that Mr. Rosenberg deliberately and improperly cultivated ignorance about Hillstead and its details. D.I. 324 at 18-22.

As explained in BSC's opening submission, Mr. Rosenberg admittedly looked at the European search report and Hillstead in July 1995. *Id.* at 18-19. This review put him "on notice of the likelihood that specific, relevant, material information exist[ed]" in those materials. *Brasseler*, 267 F.3d at 1383. Therefore, once he assumed responsibility for the U.S. prosecution, Mr. Rosenberg was not free to choose "not to investigate the facts necessary to determine the materiality of the [information]" in his European file "in an effort to avoid complying with [his] duty to disclose." *Id.* at 1382.

Dr. Rosenberg failed to comply with this duty to investigate. As Cordis does not dispute, he did not look in his European file that contained the search report and the cited references after he assumed responsibility for the U.S. prosecution, even after he met with Dr. Fischell in June 1996 to discuss prior art from the European prosecution. D.I. 326 at 8-9, ¶¶ 21-25. Therefore, he improperly and deliberately "cultivated ignorance" "to avoid actual knowledge of th[e] information or prior art" in his European file, including the search report and Hillstead. *Id.*; *FMC*, 836 F.2d at 526 n.6.[5, 6]

---

[5] Mr. Rosenberg's failure to look in his European file also is analogous to the failure of the attorneys in *Brasseler* to investigate the date and circumstances of the potential on-sale bar event after they received notice of its existence. 267 F.3d at 1381-85.

[6] Cordis tries to justify Mr. Rosenberg's failure to look in his European file by noting that the EPO did not reject any claim based on Hillstead. D.I. 326 at 5, ¶ 9 (citing PX-5116). That is beside the point because this Court has already found that Hillstead was material to the '312 prosecution and the Federal Circuit affirmed that finding. *Cordis*, 2006 U.S. App. LEXIS 16621, at *4-5. Moreover, Mr. Rosenberg's subsequent actions show that he understood that his European file contained potentially material information: After he learned that Cordis had sued BSC, he immediately looked in that file to retrieve prior art for disclosure in the '370 prosecution. D.I. 1055, Tr. 994:9-95:18; D.I. 326 at 12, ¶ 34.

7

4. **There Was No Reason to Conduct a Prior Art Search Because Both Dr. Fischell and Mr. Rosenberg Already Had a Copy of Hillstead**

As explained in BSC's opening submission, this Court should also make clear that, contrary to Cordis' argument, it did not hold that Dr. Fischell and Mr. Rosenberg were under any obligation to conduct a prior art search or that they were at fault for not conducting one. D.I. 255 at 83, ¶ 48; D.I. 324 at 18-19; D.I. 326 at 16, ¶¶ 11-12. This Court stated that "neither [Dr. Fischell nor Mr. Rosenberg] took responsibility for conducting a prior art search . . ." immediately after noting that "both ha[d] copies of [Hillstead] in their respective files," which suggests that this Court was simply noting that neither Dr. Fischell nor Mr. Rosenberg claimed to have searched in his file. D.I. 255 at 83, ¶ 48. Indeed, a prior art search would have been redundant given that each of them already had a copy of Hillstead and the search report that highlighted its materiality.

In this regard, this Court should also make clear that its earlier findings that "[t]he patentees purposefully neglected their responsibility of candor to the PTO by 'putting their heads in the sand' regarding prior art related to their newly added [undulating longitudinal] limitation" and that "the fact that [the] patentees knew, or should have known, that the Hillstead patent would be material to the PTO's consideration of the '312 application" embodied findings that Dr. Fischell and Mr. Rosenberg at least cultivated ignorance about Hillstead, for the reasons set forth above. D.I. 255 at 88-89, ¶ 12.

5. **Cordis' Good Faith Explanations Are Not Credible**

As explained in BSC's opening submission, the Court should reject Cordis' proffered good faith explanations for the failure to disclose Hillstead. D.I. 324 at 12-14.

    a. **The July 1995 Letter Did Not Instruct Dr. Fischell to Disregard Hillstead**

As explained in BSC's opening submission, Cordis' "innocent explanation" that Dr. Fischell was not aware of Hillstead because he supposedly focused on Sgro in reliance on Mr. Rosenberg's July 1995 letter is not credible. *Id.* at 12-13; D.I. 326 at 15.

8

Mr. Rosenberg's letter merely stated that Sgro was "the only reference which is stated [in the search report] as being particularly relevant to Claim 1" of the European application. But European claim 1 did not contain the undulating longitudinal feature that Dr. Fischell understood was important to patentability in the U.S. Moreover, the letter stated that the search report and the cited references were "enclosed for [Dr. Fischell's] review," which is hardly a command to disregard them, especially given that the search report was only three pages long and there were only five additional cited patents besides Sgro.[7] Finally, Cordis' explanation is unconvincing given that Dr. Fischell understood that he had to determine whether the cited prior art was material, and that Mr. Rosenberg was not advising him about that issue for the U.S. prosecution.

### b.   Dr. Fischell and Mr. Rosenberg Did Not Disclose Lam in the Belief that It Disclosed Undulating Longitudinal Structures

Cordis' story that Dr. Fischell and Mr. Rosenberg exhibited good faith because in June 1996 they disclosed Lam to the Patent Office and wrote pending claim 28 to distinguish it in the (mistaken) belief that it disclosed undulating longitudinal structures was concocted for trial and is not credible. D.I. 326 at 10-11, ¶¶ 27-29; 18-19, ¶¶ 20-23.

Cordis' story does not comport with the prosecution history. As explained in BSC's opening submission, unlike Hillstead, Lam has undulating structures only in the <u>circumferential</u> direction, not the <u>longitudinal</u> direction. D.I. 324 at 13-14. Therefore, Dr. Fischell and Mr. Rosenberg could, and did, distinguish Lam in the June 1996 IDS on the ground that Lam did not have "undulating structures . . . coupled to any longitudinal structures." PX-5003, Tab 30 at 86. In other words, as the Federal Circuit found, Dr. Fischell "distinguish[ed] Lam on the ground that

---

[7] These facts make *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387 (Fed. Cir. 1988) distinguishable, not "closely on point" as Cordis argues. D.I. 326 at 16, ¶ 9. In *Demaco*, the foreign lawyer <u>did not send</u> the U.S. lawyer the prior art reference cited in the foreign prosecution, even after the U.S. lawyer sought clarification, stating that "this was not deemed necessary." 851 F.2d at 1395-96. In contrast, Mr. Rosenberg <u>did send</u> Dr. Fischell a copy of Hillstead and the search report "for [his] review."

its undulating sections were not longitudinal structures." *Cordis*, 2006 U.S. App. LEXIS 16621, at *5 n.1. This is not a distinction that could have been made about Hillstead.

Moreover, contrary to Cordis' argument, since the distinction that Lam's undulating structures were not longitudinal was sufficient, Dr. Fischell and Mr. Rosenberg did not need to, and did not, distinguish Lam from claim 28 on the ground that its "undulating structures" did not have "straight sections." D.I. 326 at 19, ¶ 22. Indeed, they did not say <u>anything</u> in the prosecution history about Lam in relation to claim 28; their <u>only</u> statement about Lam was the one in the IDS set forth above.[8, 9]

This is not surprising, since Cordis' unsupported story about Lam was concocted for trial. As explained in BSC's opening submission, at his deposition Dr. Fischell testified that during the '312 prosecution he did not consider any prior art to have undulating longitudinals. Only at trial did he (for the first time) tell the story about how he supposedly disclosed Lam because he mistakenly believed it to disclose the undulating longitudinal feature. D.I. 324 at 9-10. If anything, Cordis' transparent attempt to rewrite history is evidence of bad faith, not good faith.

**D.     The Inequitable Conduct Committed during the '312 Prosecution Renders the '370 Patent Unenforceable**

   **1.     The Failure to Disclose Hillstead during the '312 Prosecution "Taints" the '370 Patent**

As explained in BSC's opening submission, this Court should find that the inequitable conduct committed during the '312 prosecution taints and renders unenforceable the '370 patent. D.I. 324 at 22-23.

---

[8] Presumably to bolster its story about how claim 28 supposedly was written to distinguish Lam, Cordis distorts the quoted statement in the IDS by surreptitiously inserting the word "straight" (from claim 28) before the word "longitudinal" in its quotation. D.I. 326 at 11, ¶ 29.

[9] Cordis' story also is belied by the fact that in May 1997, before they discovered that they (supposedly) had misapprehended Lam, Dr. Fischell and Mr. Rosenberg submitted new claim 21, which covered any stent with multiple "undulating longitudinals" for enhancing flexibility, even though that is what they claim to have believed that Lam disclosed. PX-5002, Tab 13 at 175; D.I. 1054, Tr. 925:8-12, 927:8-18, 992:10-21.

10

Inequitable conduct "early in the prosecution may render unenforceable all claims which eventually issue from . . . a related application." *Fox Indus. v. Structural Pres. Sys.*, 922 F.2d 801, 804 (Fed. Cir. 1990). Such a taint arises if the "'inequitable conduct in prosecuting the [parent] patent ha[s] [an] immediate and necessary relation to the . . . enforcement of the [child] patent[].'" *Cordis*, 2006 U.S. App. LEXIS 16621, at *13 (quoting *Consol. Aluminum v. Foseco Int'l*, 910 F.2d 804, 810-11 (Fed. Cir. 1990) (citing *Keystone Driller v. Gen. Excavator*, 290 U.S. 240, 245 (1933))).

In particular, inequitable conduct committed by withholding prior art during the prosecution of a parent application will taint a patent where that patent issues from a continuation application and claims similar subject matter related to the withheld prior art. *Agfa Corp. v. Creo Products*, 451 F.3d 1366, 1379 (Fed. Cir. 2006); *see also eSpeed v. Brokertec USA*, 417 F. Supp. 2d 580, 595-96 (D. Del. 2006), *appeal docketed*, No. 06-1385 (Fed. Cir. May 4, 2006); *Semiconductor Energy Lab. v. Samsung Electronics America*, 24 F. Supp. 2d 537, 543-45 (E.D.Va. 1998), *aff'd on other grounds*, 204 F.3d 1368 (Fed. Cir. 2000); *Jack Frost Lab. v. Physicians & Nurses Mfg. Corp.*, 901 F. Supp. 718, 729 (S.D.N.Y. 1995), *aff'd*, 1997 U.S. App. LEXIS 26138 (Fed. Cir. 1997) (unpublished).

That is precisely the situation here. The '370 patent issued from a continuation of the '312 application. Every claim of the '370 patent includes the same undulating longitudinal feature that was disclosed by Hillstead, that Dr. Fischell argued during the '312 prosecution the prior art did not disclose, and that was critically important to the patentability of both the '312 and '370 patents. Therefore, the failure to disclose Hillstead during the '312 prosecution taints the '370 patent. *Agfa*, 451 F.3d at 1379.

The required "immediate and necessary relation" is also present because the earlier inequitable conduct "permeated the prosecution" of the '370 patent. *See Consolidated*, 910 F.2d at 809-812 (inequitable conduct tainted later unrelated patents because it was the basis for arguments made during the later prosecution). Contrary to Cordis' arguments, during the '370

11

prosecution Dr. Fischell <u>did</u> "make . . . use of" and "obtain [a] benefit from" the earlier inequitable conduct and he <u>did</u> "suggest that undulating longitudinals did not exist in the prior art." D.I. 326 at 20, ¶ 25; 21, ¶ 28. Thus, again contrary to Cordis' argument, the prior inequitable conduct <u>did</u> "affect" the '370 prosecution. D.I. 326 at 21, ¶ 28.

The '370 application was prosecuted before the same examiner as the '312 application. Dr. Fischell previously falsely told that examiner during the '312 prosecution that the prior art did not disclose the undulating longitudinal feature that was critical to the patentability of the claims in both patents. During the '370 prosecution, Dr. Fischell and Cordis relied on this earlier inequitable conduct by doing nothing to disabuse the examiner of that false understanding: They did not tell the examiner that Hillstead disclosed the undulating longitudinal feature or that Dr. Fischell's earlier arguments that the prior art did not disclose that feature were false. Instead, they remained silent and let the examiner continue to believe that the key to patentability was the undulating longitudinal feature and that the prior art did not disclose that feature.

Working from that false premise, during the '370 prosecution the examiner repeatedly tried to find prior art that disclosed the critical undulating longitudinal feature. He twice rejected all of the pending claims as anticipated by two different references, each of which he asserted disclosed "a stent . . . comprising longitudinals . . . having an undulating shape . . ." PX-5002, Tab 14 at 186; Tab 26 at 281. In both instances, Dr. Fischell made use of the '312 prosecution by relying on the original filing date of the parent '312 application to antedate the reference. *Id.*, Tab 20 at 268-69; Tab 27 at 283-85. However, despite the fact that the examiner's two rejections showed that he continued to believe that the undulating longitudinal feature was the key to patentability, Dr. Fischell and Cordis did not tell the examiner that Hillstead—which indisputably was prior art—disclosed that very feature. They did not do so even though Dr. Fischell had already met with Cordis' litigation counsel to discuss the '370 prosecution, and had made notes that the new claims had to be "clearly allowable over Hillstead." D.I. 324 at 24-25.

12

Thus, the earlier inequitable conduct "permeated the prosecution" of the '370 patent. *Consolidated*, 910 F.2d at 812. This fact, taken together with the close relationship between the undulating longitudinal feature included in the claims of the '312 and '370 patents and the earlier failure to disclose Hillstead, more than establishes the "immediate and necessary relation" required for the earlier inequitable conduct to taint the '370 patent. *Agfa*, 451 F.3d at 1379; *Consolidated*, 910 F.2d at 810-12.

### 2. Cordis' Disclosure of Hillstead During the '370 Prosecution Did Not "Cure" the Earlier Inequitable Conduct

Finally, as explained in BSC's opening submission, the Court should find that Dr. Fischell's disclosure of Hillstead during the '370 prosecution did not "cure" the earlier inequitable conduct committed during the '312 prosecution. D.I. 324 at 23-25.

Cordis pats itself on the back for burying Hillstead among some 60 references in an IDS during the '370 prosecution, protesting that the prosecution "was entirely innocent," that it acted "with commendable alacrity" and that "[i]t did nothing wrong." D.I. 326 at 19, ¶ 24; 22-24, ¶¶ 30-34. However, Cordis fails to address the only relevant issue, which is whether this cryptic disclosure of Hillstead was sufficient to "cure" the earlier inequitable conduct under *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983). Instead, Cordis tries to distinguish *Rohm* by arguing that it only applies to curing an earlier misrepresentation, not an earlier failure to disclose prior art. D.I. 326 at 24, ¶ 35. But the Federal Circuit clearly thought otherwise when it instructed this Court to address the "cure" doctrine of *Rohm* on remand in this case:

> [T]he court should address the parties' arguments as to whether the disclosure of the Hillstead patent "cured" any inequitable conduct in the '312 prosecution, or whether, in light of the context in which the Hillstead patent was disclosed and the applicant's characterization of the prior art, that disclosure failed to cure the taint. *See Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572-73 (Fed. Cir. 1983).

*Cordis*, 2006 U.S. App. LEXIS 16621, at *15. Several district courts, including this one, have also reached the conclusion that the *Rohm* "cure" doctrine applies to the disclosure of a

13

previously withheld prior art reference in a later application.  *See eSpeed*, 417 F. Supp. 2d at 596-97; *Semiconductor*, 24 F. Supp. 2d at 544-45.

Aside from arguing that *Rohm* does not apply, Cordis has no response to BSC's argument that the disclosure of Hillstead during the '370 prosecution was insufficient to cure the earlier inequitable conduct under *Rohm*.  *See eSpeed*, 417 F. Supp. 2d at 597 (disclosure of previously withheld prior art in later application insufficient to cure earlier inequitable conduct under *Rohm*); *Semiconductor*, 24 F. Supp. 2d at 545 (same).

As BSC explained in its opening submission, Dr. Fischell and Cordis did not "expressly advis[e] the PTO of [the previous inequitable conduct], stating specifically wherein it resides," as required by *Rohm*.  722 F.2d at 1572.  Even though the '370 application was prosecuted before the same examiner as the '312 application, whom Dr. Fischell had previously falsely told that the prior art did not disclose the undulating longitudinal feature that was critical to patentability, Dr. Fischell and Cordis did not tell that examiner that they had previously failed to disclose Hillstead, that Hillstead disclosed the undulating longitudinal feature, or that Dr. Fischell's earlier arguments were false.  Instead, they let the examiner continue to believe that no prior art disclosed the undulating longitudinal feature and that it was the key to patentability, even though Dr. Fischell had already made notes that the new claims in the '370 application had to be "clearly allowable over Hillstead." D.I. 324 at 24-25.

Given this failure to advise the examiner of the previous inequitable conduct, the cryptic disclosure of Hillstead along with some sixty other references in an IDS did not cure the earlier inequitable conduct under *Rohm*.

## CONCLUSION

For the reasons set forth above and in BSC's opening submission, BSC respectfully requests that the Court make BSC's proposed supplemental findings in support of the judgment that the '312 and '370 patents are unenforceable.

Dated: December 13, 2006                                   Respectfully submitted,

/s/ Karen E. Keller

Of Counsel:                              By: _____
                                         Josy W. Ingersoll (I.D. #1088)
George E. Badenoch                       Karen E. Keller (I.D. #4489)
Albert J. Breneisen                      YOUNG CONAWAY STARGATT &
Mark A. Chapman                            TAYLOR, LLP
Huiya Wu                                 The Brandywine Building
KENYON & KENYON LLP                      1000 West Street, 17th Floor
One Broadway                             Wilmington, Delaware 19899-0391
New York, New York 10004                 (302) 571-6600
(212) 425-7200                           kkeller@ycst.com

William M. Merone                        Attorneys for Defendants
KENYON & KENYON LLP                      Boston Scientific Corporation,
1500 K Street, NW                        and Boston Scientific Scimed, Inc.
Washington, DC 20005                     (formerly Scimed Life Systems, Inc.)
(202) 220-4200

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on December 13, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on December 13, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL AND FEDERAL EXPRESS**

> William F. Cavanaugh, Jr., Esquire
> Eugene M. Gelernter, Esquire
> Patterson, Belknap, Webb & Tyler
> 1133 Avenue of the Americas
> New York, NY 10036

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ Karen E. Keller
> _____
> Karen E. Keller (No. 4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> (302) 571-6600
> kkeller@ycst.com
>
> Attorneys for Boston Scientific Corporation and Boston Scientific Scimed, Inc.